IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALLISON WARREN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0603-WS-M |
| ) | |
| COOK SALES, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on plaintiffs' filing styled "Consent Motion for Order Certifying this Case as a Collective Action for Settlement Purposes and Authorizing Notice of Settlement" (doc. 50). The Court understands that plaintiffs filed this Consent Motion pursuant to a compromise settlement they negotiated with defendants. The Court further understands that defendants object to neither the Consent Motion nor the form and contents of this Order.

**I.      Background**.

Plaintiffs Allison Warren, Chester Dampier, Sherri Mullinax and Evelyn Clem (collectively, the "Named Plaintiffs") brought this action seeking unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), against defendants, Cook Sales, Inc. and Cook Portable Warehouses of Mississippi, LLC. The Complaint (doc. 1) alleged that plaintiffs were employed by defendants as sales representatives and/or lot managers, that they routinely worked more than 40 hours per week, and that defendants failed to pay them overtime pay of one and one-half times their regular rates of pay for hours worked in excess of 40, as required by the FLSA. Plaintiffs brought their Complaint as a putative FLSA collective action, on their own behalf and on behalf of all other similarly-situated sales representatives, pursuant to 29 U.S.C. § 216(b). On January 28, 2016, plaintiffs filed a Notice of Filing Consents to Join Suit (doc. 15) reflecting that Gladys Swain, Charlotte Smith, Amanda Mathis and

Shannon Rose (collectively, the "Original Opt-Ins") had executed consent forms and sought to join this action as parties plaintiff.[1]

For its part, Cook Sales vigorously disputed plaintiffs' theory of liability and denied that the challenged compensation practices and policies were violative of the FLSA. Most notably, Cook Sales maintained that plaintiffs' claims were defeated by the retail and service establishment exemption found at Section 7(i) of the FLSA.[2] Additionally, Cook Sales asserted that its conduct was not willful, such that the FLSA's two-year limitations period, rather than the three-year alternative, should apply; and objected that this case was ill-suited for treatment as a collective action because the Named Plaintiffs and putative opt-ins were not similarly situated. (*See* doc. 9.)

On March 9, 2016, while plaintiffs' Motion for Conditional Certification (doc. 14) was pending, the parties jointly requested that these proceedings be stayed pending the outcome of mediation. (Doc. 31.) To facilitate their negotiations, the parties entered into a Tolling Agreement (doc. 34) that would toll the running of the statute of limitations as of December 22, 2015, for the claims of sales representatives in the putative class. The Court granted the joint motion to stay via Order (doc. 33) entered on March 10, 2016. In the ensuing five months, the parties have worked diligently together and with mediator Fern Singer to forge an agreement that would resolve this matter in its entirety. They have now achieved that objective, subject to judicial approval.

---

[1] A fifth individual, Janice Anderson, also executed a Consent to Join form that plaintiffs filed contemporaneously with the others. (*See* doc. 15-1, at 9.) On May 11, 2016, however, the Court entered an Order (doc. 37) dismissing Anderson's opt-in claims without prejudice based on plaintiffs' representation that she no longer wished to participate in this action. For that reason, Anderson is not considered among the Original Opt-Ins identified *supra* as part of plaintiffs' January 28 Notice of Filing Consents. She remains eligible to join this action as an opt-in plaintiff and participate in the settlement as a Future Opt-In if she so chooses.

[2] That exemption provides that an employer does not violate the FLSA's overtime requirements by employing an employee of a retail or service establishment for more than 40 hours per workweek if "(1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services." 29 U.S.C. § 207(i).

To effectuate the parties' mediated settlement, plaintiffs request an order from this Court certifying this case as an FLSA collective action for settlement purposes, approving the distribution of the parties' proposed Notice of Settlement to putative opt-in plaintiffs, and otherwise adopting the parties' proposed sequence and timing of subsequent steps in the settlement implementation process.

## II.    Collective Action Certification.

Pursuant to Section 216(b) of the FLSA, an action to recover unpaid overtime compensation "may be maintained against any employer … by any one or more employees for and in behalf of himself or themselves **and other employees similarly situated**." 29 U.S.C. § 216(b) (emphasis added). In contrast to the traditional Rule 23 framework in which similarly situated persons' interests may be litigated without their formal consent, the FLSA features an opt-in mechanism for similarly situated employees. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 950 n.3 (11th Cir. 2007) ("Unlike class actions governed by Rule 23 …, FLSA collective actions require potential class members to notify the court of their desire to opt in to the action.").

The Eleventh Circuit has explained that "[t]he key to starting the motors of a collective action is a showing that there is a similarly situated group of employees." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008); *see also Anderson*, 488 F.3d at 952 ("To maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated.") (citations omitted). "[U]ltimately, whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another." *Morgan*, 551 F.3d at 1262. In ascertaining whether the "similarly situated" requirement has been satisfied, the Eleventh Circuit has endorsed a pragmatic two-stage analysis. "[A]t the initial stage the district court's decision to certify a class is based primarily on pleadings and affidavits," such that "courts apply a 'fairly lenient standard' for determining whether the plaintiffs are truly similarly situated." *Anderson*, 488 F.3d at 953 (citations omitted). If certification is granted using this fairly lenient standard at the initial stage, then "putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208,

1218 (11th Cir. 2001) (citation omitted).  This standard "may be most useful when making a certification decision early in the litigation before discovery has been completed." *Anderson*, 488 F.3d at 952.  The parties agree for settlement purposes that the "fairly lenient standard" described in *Anderson* and *Hipp* is properly applied here.

"[N]either Congress nor the Eleventh Circuit has precisely defined 'similarly situated' in the context of a motion" like the one presented here. *Williams v. Omainsky*, 2016 WL 297718, *4 (S.D. Ala. Jan. 21, 2016).  Nonetheless, the parties identify three guiding principles, all of which find support in the case law.  First, "the similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions." *Anderson*, 488 F.3d at 953 (citation omitted).  Second, plaintiffs' burden of showing classwide similarity "is not heavy" and may be satisfied by "detailed allegations supported by affidavits." *Hipp*, 252 F.3d at 1219 (citations omitted).  Third, the decision of whether or not to certify a collective action pursuant to § 216(b) "remains soundly within the discretion of the district court." *Id.*

The parties have agreed for settlement purposes that this case is properly certified as a collective action pursuant to § 216(b) of the FLSA.  On that basis, they ask that the Court grant such certification of the FLSA claims and allow a reasonable opportunity for potential opt-in plaintiffs (the "Potential Opt-Ins") to sign consent forms and join in the settlement of this action pursuant to § 216(b).  There appears to be no dispute among the parties for settlement purposes that plaintiffs have satisfied the "similarly situated" test.  In particular, plaintiffs point to declarations executed by the Named Plaintiffs some time ago reflecting that all of them were sales representatives for Cook Portable Warehouses who worked significant overtime hours without receiving overtime premium pay and who performed similar duties of selling and renting portable storage sheds to prospective customers.  (*See* doc. 14, Exhs. A-D.)  Plaintiffs also indicate that a common issue affecting the overtime claims of Named Plaintiffs, Original Opt-Ins and Potential Opt-Ins is whether Cook Sales meets the requirements of the retail or service establishment exemption found at 29 U.S.C. § 207(i).  Although the parties disagree as to whether the § 207(i) exemption applies, they agree for purposes of settlement that the Named Plaintiffs, Original Opt-Ins and Potential Opt-Ins are similarly situated and that § 216(b) certification should be granted.  Upon careful consideration, and in furtherance of the parties' settlement, the Court **grants** that request.  This case will be certified as an FLSA collective

action, as to which notice shall issue to all sales representatives employed by Cook Sales between December 22, 2012 and December 22, 2015, a liability period commencing three years prior to the effective date of the parties' Tolling Agreement.

### III. Authorization to Provide Notice of Settlement.

By the terms of the parties' Release and Settlement Agreement (doc. 51, Exh. 2), Cook Sales shall pay the sum of $495,000.00 into a common fund, referred to as the "Gross Fund," to settle the claims of the Named Plaintiffs, Original Opt-Ins, and Potential Opt-Ins who elect to join this action in a timely manner.  (*Id.* at ¶ 4.)  Pursuant to that Settlement Agreement, the parties have agreed that, subject to court approval, the Gross Fund will also be used to pay attorney's fees, litigation costs and expenses of plaintiffs' counsel in an amount not to exceed $148,500.00, which constitutes 30% of the Gross Fund.  (*Id.* at ¶ 4.a.)[3]  The Settlement Agreement also provides that the Gross Fund will be used to compensate each of the four Named Plaintiffs and each of the four Original Opt-Ins with a "service payment" of $5,000, for an aggregate total of $40,000.  (*Id.* at ¶ 4.b.)[4]  And the Settlement Agreement provides that the Gross Fund will be used to pay all costs, fees and expenses of a Settlement Claims Administrator, not to exceed $15,000.  (*Id.* at ¶ 4.c.)

Pursuant to the Settlement Agreement, the Gross Fund less plaintiffs' attorney's fees, costs and expenses; the Settlement Claims Administrator's fees, costs and expenses; and the service payments to Named Plaintiffs and Original Opt-Ins, shall be referred to as the Net Fund.  (*Id.* at ¶ 4.d.)  The parties have agreed that the Net Fund will be used to pay back pay and liquidated damages to Named Plaintiffs, Original Opt-Ins, and any Potential Opt-Ins who timely submit consents to join the class (the "Future Opt-Ins").  The Net Fund will be used to make settlement payments to Future Opt-Ins in accordance with a formula based on the number of

---

[3]  Notably, the Settlement Agreement neither requires that plaintiffs' counsel be compensated in the amount of $148,500 nor conditions the settlement on judicial approval of plaintiffs' counsel's fees, costs and expenses in any particular sum.  (*Id.* at ¶ 4.f.)

[4]  The service payments are designed to compensate these individuals for their efforts in the investigation of this litigation, their participation in discovery, and their preparation for and attendance at mediation, all for the benefit of themselves and Potential Opt-Ins.

weeks each employee is reported to have worked during the liability period.  (*Id.* at ¶ 8.)[5] Payments to Future Opt-Ins will be allocated evenly between back pay and liquidated damages. According to the Settlement Agreement, "[t]he amounts allocated to Future Opt-Ins pursuant to this formula shall revert to Defendants for any Potential Opt-Ins who fail to timely file a claim form."  (*Id.*)

With respect to Named Plaintiffs and Original Opt-Ins, however, the Settlement Agreement fixes payments from the Net Fund in the following amounts, inclusive of back pay and liquidated damages (without regard to the formula utilized in computing settlement payments to Future Opt-Ins):

| | |
|---|---|
| Evelyn Clem | $1,955.53 |
| Chester Dampier | $2,672.56 |
| Amanda Mathis | $987.88 |
| Sherri Mullinax | $2,084.45 |
| Shannon Rose | $832.98 |
| Charley Smith | $1,770.11 |
| Gladys Swain | $2,361.97 |
| Allison Warren | $2,888.16 |

Cook Sales will pay the employer's portion of all taxes due on the back pay awards to Named Plaintiffs, Original Opt-Ins, and Future Opt-Ins.

The Court need not and does not make any final determination at this time with regard to approval of this settlement.  The Consent Motion does not request such final approval; rather, it is quite properly confined to a request for preliminary approval to furnish Potential Opt-Ins with a Notice of Settlement.  The parties propose that the following procedural path govern this action, in sequential order: (i) the Court approves the Notice of Settlement and authorizes plaintiffs to distribute such notice to Potential Opt-Ins; (ii) plaintiffs provide notice to Potential Opt-Ins of their right to join the collective action and, if they do so in a timely manner, their right to file objections to the proposed settlement; and (iii) the Court conducts a final approval hearing to ascertain whether the settlement should be approved after the deadline expires for Future Opt-

---

[5] The expectation is that the formula will yield payments to Future Opt-Ins of approximately $45.00 per week, which plaintiffs' counsel believes – based on extensive damage modeling – to be "very close to" the damages to which these individuals would otherwise have been entitled for working 45 minutes off the clock per day during each week of employment as sales representatives for Cook Sales. (Smith Decl. (doc. 51), ¶ 26.)

Ins to join and to interpose any objections they may have.  In support of this protocol, the parties cite various unpublished case authorities from the Middle District of Florida.

Along with their Consent Motion, the parties have submitted a five-page proposed Notice of Settlement.  (Doc. 51, Exh. 3.)  All parties have agreed to the form and contents of this proposed Notice, and have stated their position that this document "fairly and clearly inform[s] Potential Opt-Ins of their legal options with respect to participating, or not, in the settlement of this litigation and their right to object to the Settlement."  (Doc. 50, at 20.)  After review, the undersigned deems the proposed Notice to be appropriate.  The "Notice of Settlement" is hereby **approved** for dissemination and transmission to Potential Opt-Ins.

IV.   **Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1. The Consent Motion for Order Certifying Collective Action for Settlement Purposes and Authorizing Notice of Settlement (doc. 50) is **granted**;
2. The Court **certifies** for settlement purposes a class consisting of all sales representatives employed by Cook Sales, Inc., during the period spanning from December 22, 2012 through December 22, 2015;
3. The proposed Notice of Settlement (doc. 51, Exh. 3) is **approved** and the parties are hereby **authorized** to distribute such document to Potential Opt-Ins;
4. At the parties' request, Simpluris Class Action Settlement Administration is **appointed** to serve as the Settlement Claims Administrator in this action;
5. Pursuant to the parties' request, within 15 days after entry of this Order, Cook Sales shall provide the Settlement Claims Administrator with a spreadsheet listing the names, employee identification numbers, dates of employment (during the period of December 22, 2012 through December 22, 2015), state(s) of employment, most recent mailing addresses, telephone numbers, e-mail addresses (if available) and Social Security numbers of all Potential Opt-Ins.  This sensitive employee data is confidential and must be handled with great care.  The parties and the Settlement Claims Administrator are **ordered** to devise and implement appropriate security measures to protect all such data from any unnecessary third-party access or disclosure.  Prior to mailing the Notice of Settlement to Potential Opt-Ins, the Settlement Claims Administrator shall take reasonable steps to

attempt to confirm accuracy of names and addresses through the U.S. Postal Service's National Change of Address database;

6. Within 14 days after receiving the spreadsheet from Cook Sales, the Settlement Claims Administrator shall mail the Notice of Settlement (in substantially the form found at doc. 51, Exhibit 3) to Potential Opt-Ins. The Notice of Settlement shall be accompanied by the Consent to Join Form, the Settlement Share Form, and a pre-addressed, postage-paid return envelope.

7. For any Notice of Settlement returned as undeliverable, the Settlement Claims Administrator shall promptly undertake to locate such Potential Opt-In via reasonable electronic search utilizing available identifying information from the spreadsheet. Should such an electronic search be successful, the Settlement Claims Administrator shall promptly mail an additional Notice of Settlement and accompanying documentation to that individual.

8. The Settlement Claims Administrator shall mail a reminder postcard approximately 30 days after the initial mailing of the Notice of Settlement for any Potential Opt-In who has not yet submitted a Consent to Join Form.

9. Defendants and their counsel must abide by the provisions of paragraph 15 of the Settlement Agreement with regard to non-interference with the claims administration process.

10. The Settlement Claims Administrator shall provide electronic copies of all executed Consent to Join Forms and any Objections to all counsel in a timely manner. It is plaintiffs' counsel's responsibility to file all Consent to Join Forms (as a single, consolidated docket entry) and any and all Objections with the Clerk of Court within 15 days after the claims bar date.

11. The Court must still determine whether proposed settlement is fair, adequate and reasonable, and whether it satisfies the legal test set forth in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) and *Crabtree v. Volkert, Inc.*, 2013 WL 593500 (S.D. Ala. Feb. 14, 2013).

12. The parties' memoranda of law (accompanied by exhibits as appropriate) seeking final approval of the settlement pursuant to *Lynn's Food* and responding to the Objections must be filed on or before **December 30, 2016**. Copies of responses

-9-

        to Objections must also be served on the opt-in plaintiff(s) who raised such Objections.

13.      A final approval hearing is scheduled for **January 18, 2017 at 10:00 a.m.** in Courtroom 2A of the United States Courthouse, 113 St. Joseph Street, Mobile, Alabama.

14.      In light of the foregoing determinations, Plaintiffs' Motion for Conditional Certification and to Facilitate Notice (doc. 14) and is **moot**.  Likewise, defendant Cook Sales' Motion to Strike Plaintiffs' Supplemental Brief (doc. 32) relating to that now-superseded Motion for Conditional Certification is **moot.**

DONE and ORDERED this 25th day of August, 2016.

                                        s/ WILLIAM H. STEELE
                                        CHIEF UNITED STATES DISTRICT JUDGE