**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION**

| | | |
|---|---|---|
| **ALLISON WARREN, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **v.** | ) | **1:15-cv-00603-WS-M** |
| | ) | |
| **COOK SALES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

**CONSENT MOTION FOR FINAL ORDER APPROVING SETTLEMENT
OF COLLECTIVE ACTION AND DISMISSING CASE AND
MEMORANDUM IN SUPPORT**

---

Sixty-one Opt-In Plaintiffs timely filed consent to join and release forms in response to receiving Court-authorized notice of the Parties' proposed settlement of this case; one late claim form was submitted, but later withdrawn. *See* Docs. 54, 55, and 56.[1] These Plaintiffs signified their desire to receive a share of a settlement fund which Cooks Sales, Inc. ("Cook Sales") has established to compensate them for their claims of allegedly being denied overtime wages, and for their alleged entitlement to liquidated damages, attorneys' fees and

---

[1] One of the Potential Opt-In Plaintiffs, Vanessa Dykes, is deceased. Her husband, James Dykes, completed a consent to join and release form for Ms. Dykes, but he did not timely return it prior to the claims bar date. Plaintiffs' counsel filed the late claim form for Mr. Dykes, *see* Doc. 55, but withdrew the claim after Mr. Dykes indicated that there was no good cause to support the late filing of the claim form and stated that he did not wish to pursue the claim, *see* Doc. 56 and the Supplemental Declaration of Sam J. Smith, filed contemporaneously herewith, at ¶ 3. The Settlement Claims Adminstrator has provided Mr. Dykes with notice that Ms. Dyke's late claim form was not accepted as part of the Settlement. Smith Supp. Decl., at ¶ 3.

costs.  None of the Opt-In Plaintiffs or Potential Opt-In Plaintiffs lodged any objections to the Settlement.

At this time, Named Plaintiffs Allison Warren, Chester Dampier, Sherri Mullinax, and Evelyn Clem, and Original Opt-in Plaintiffs Amanda Mathis, Shannon Rose, Charley Smith, and Gladys Swain, along with the 61 Opt-In Plaintiffs (collectively, "Plaintiffs") seek final approval of the Parties' settlement, which was arrived at after significant disputes and extensive negotiations between skilled counsel for both sides under the direction of an experienced mediator.  All responses to the notice were supportive of the settlement, no objections have been filed, and participation has been substantial.  In light of these facts and based on the foregoing memorandum in support,  Plaintiffs hereby seek final approval of the settlement and request that the Court dismiss the case with prejudice while retaining jurisdiction to enforce the terms of the settlement.  Defendants consent to this motion and support the settlement.  A proposed order is attached to the Supplemental Declaration of Sam J. Smith as Exhibit 3.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiffs were employed by Cook Sales as sales representatives who sold and rented portable sheds.  Doc. 1, ¶¶ 4-7.  On November 24, 2015, Named Plaintiffs filed the above-captioned collective action against Defendants, on behalf of themselves and other sales representatives similarly situated to them, alleging that throughout their employment, Cook Sales did not properly pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Doc. 1.  Cook Sales denies Plaintiffs' claims, in part, based on the retail and service establishment exemption to the FLSA's overtime compensation

requirements.   29 U.S.C. § 207(i); Docs. 9, 21.   After the Complaint was filed, five other sales representatives opted into this case.[2]   *See* Doc. 15.

On January 28, 2016, Plaintiffs filed a motion to conditionally certify the case as a collective action, Doc. 14.   On February 12, 2016, Cook Sales filed an opposition brief, Doc. 21, and on February 22, 2016, Plaintiffs filed a reply brief, Doc. 23.   While the motion to conditionally certify the collective action was pending, the Parties filed a joint motion to stay the proceedings pending mediation, Doc. 31, and entered into an agreement tolling the statute of limitations as of December 22, 2015 for the claims of the sales representatives in the putative collective action, Doc. 34.   Thereafter, the Parties diligently worked with experienced Mediator Fern Singer to resolve this matter.

Prior to mediation, Cook Sales produced daily time records and payroll records for Plaintiffs.   *See* Declaration of Sam J. Smith ("Smith Decl."), filed with the Court on August 12, 2016, Doc. 51, ¶ 10.   Plaintiffs' counsel created a comprehensive damage analysis of Plaintiffs' claims and used this analysis to estimate the damages for Potential Opt-Ins.   *Id.* On May 25, 2016, the Parties spent a full day mediating with Ms. Singer, attempting to resolve this case.   *Id.*   The Parties were unable to resolve the case at mediation, but continued to work with Ms. Singer to resolve the case and, after extending the stay three times, were able to reach an agreement to resolve this collective action on July 11, 2016. *Id.*

---

[2]  One Opt-In Plaintiff, Janice Anderson, voluntarily withdrew from the case and was dismissed without prejudice.  *See* Doc. 37.  Notice was provided to Ms. Anderson pursuant to the Court's August 25, 2016 Order, Doc. 52, at 2 n. 1, and she joined the settlement.  *See* Doc. 54.

While Cook Sales continues to deny that it violated the FLSA, the Parties, with the Mediator's assistance, carefully and exhaustively negotiated a collective action settlement of this action that reflects a fair and reasonable compromise of disputed factual and legal issues.

On August 12, 2016, Named Plaintiffs Allison Warren, Chester Dampier, Sherri Mullinax, and Evelyn Clem, and Original Opt-in Plaintiffs Amanda Mathis, Shannon Rose, Charley Smith, and Gladys Swain filed a consent motion that requested that the Court certify the case as a collective action for settlement purposes and asked the Court to approve the Parties' proposed notice of settlement.[3]  Doc. 50.  On August 25, 2016, the Court granted this motion and certified this case as an FLSA collective action and approved providing notice of the settlement to all sales representatives employed by Cook Sales between December 22, 2012 and December 22, 2015.  Doc. 52, at 5.  At the Plaintiffs request, the Court postponed ruling on the fairness of the settlement to allow Potential Opt-In Plaintiffs to file consents to join the case and to lodge any objections to the settlement.  *Id.* at 6.  The Court set December 30, 2016 as the date for the filing of this memorandum in support of approval of the settlement and set the final approval hearing for January 18, 2017 at 10:00 a.m.

Pursuant to the Court's August 25, 2016 Order, after updating the mailing addresses received from Defendants, notice was issued on September 23, 2016 to 168 Potential Opt-in Plaintiffs.  *See*  Declaration of Settlement Claims Administrator Christina Francisco, ¶¶ 6-8, filed concurrently herewith.  Twelve  Notices were returned by the post office.  For those without forwarding addresses, the Settlement Claims Administrator attempted to find a

---

[3] The Parties' proposed Settlement Agreement was filed with the Court on August 12, 2016. *See* Doc. 51-2.

forwarding address using Accurint, a research tool owned by Lexis-Nexis, and provided an additional notice to any new found address.  *Id.* at ¶ 9.  On October 24, 2016, the Settlement Claims Administrator mailed a reminder postcard to 123 Potential Opt-In Plaintiffs who had not returned a Claim Form as of that date.  *Id.* at ¶ 10.

On November 18, 2016, Defendants identified three Potential Opt-In Plaintiffs who had inadvertently been omitted from the Mailing List.  The Settlement Claims Administrator promptly mailed these individuals a notice and provided these individuals with the full 60-day period to respond to the notice so that the deadline for filing their Claim Forms is January 20, 2017.[4]

In response to the notice mailing, 61 Potential Opt-In Plaintiffs timely filed Claim Forms.  *Id.* at ¶ 13.  The filing of Potential Opt-In Plaintiffs Claim Forms along with the participation of the Named Plaintiffs and Original Opt-Ins represent 38.5 percent of the members of the certified collective action and they have claims representing approximately 50 percent of the available funds after attorneys' fees, settlement administration and service awards are allocated.  Smith Supp. Decl., at  ¶ 4.

Throughout the notice and claim-filing period, Plaintiffs' counsel and the Settlement Claims Administrator responded  to Potential Opt-in Plaintiffs who had questions regarding the proposed settlement.  *See Id,* ¶   6.   During the 60-day period, all Potential Opt-in Plaintiffs who contacted  Plaintiffs' counsel expressed support for the Settlement.  *Id.*  No

---

[4] Two of the three Potential Opt-In Plaintiffs who were provided notice on November 21, 2016 have filed Claim Forms.  Francisco Decl., ¶ 11.  The other Potential Opt-In Plaintiff who was provided notice on November 21, 2016 was informed via mailed notice and voice mail of the fairness hearing date and time. *Id.*

objections were filed with Plaintiffs' counsel or the Settlement Claims Administrator.  *See id,* *at ¶* 6; Francisco Decl. ¶ 14.   Having received no objections and a significant number of consents to join this settlement,  Plaintiffs hereby present the Parties settlement to the Court for a fairness determination and final approval.

<u>**SETTLEMENT TERMS**</u>

The Parties' Settlement provides that Cook Sales will pay Four Hundred Ninety-Five Thousand Dollars ($495,000) into a common settlement fund ("Gross Fund") to compensate Plaintiffs and Future Opt-Ins.  *See* Settlement Agreement, Doc. 51-2, at ¶ 4.  Cook Sales will also pay for the fees for mediation with Ms. Singer.

The Gross Fund will fund a service payment of up to $5,000 to each of  Plaintiffs for an aggregate total of $40,000 in recognition of the efforts they made for the benefit of other Cook Sales sales representatives during the litigation, which included participation in discovery by responding to Court interrogatories and preparing for and attending mediation for the benefit of themselves and all of the Potential Opt-Ins.  *See* Smith Decl., Doc. 51, ¶ 15 and Settlement Agreement, Doc. 51-2, at ¶ 4.b.

Counsel for Plaintiffs seek to be awarded thirty percent of the Gross Fund ($148,500) to compensate them for attorneys' fees and litigation costs and expenses.  *See* Smith Decl., Doc. 51, ¶¶ 14, 30-31, Settlement Agreement, Doc. 51-2, at ¶ 4.a., and Smith Supp. Decl., at ¶ 7.  The Settlement Agreement also provides for payment of the expenses of the Settlement Claims Administrator, who has agreed to provide all duties of claims administration for $10,168.00, which is significantly less than the $15,000 allowed under the Settlement Agreement.   The Settlement Claims Administrator has been or will be responsible for

6

mailing the Notice of Settlement to Potential Opt-Ins, collecting the Consent to Join Forms and objections, if any, from Potential Opt-Ins, and providing checks and tax documents to Plaintiffs.

Pursuant to the Settlement, the balance of the Gross Fund, referred to hereinafter as the "Net Fund," was allocated for distribution to Plaintiffs and all Potential Opt-In Plaintiffs. The Parties have agreed that Plaintiffs will be paid certain fixed amounts from the Net Fund as back pay and liquidated damages (a total of $15,553.65) and the 61 timely Opt-Ins have claimed approximately $131,405.34 of the Net Fund.  Francisco Decl., ¶ 13.  Distributions from the Net Fund to all Plaintiffs will be evenly divided between back pay and liquidated damages.  Distributions to the 61 timely Opt-Ins are based upon the number of weeks worked during the Collective Period.  *See* Smith Decl., Doc. 51, ¶ 17.  Amounts allocated to back pay shall be subject to all required employee-paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA and FUTA taxes, and other state-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.).  Cook Sales will pay the employer's share of FICA and FUTA, and any other state-specific requirements on the payments designated as back pay.  Amounts allocated as liquidated damages shall be treated as non-wage income.  The Settlement Claims Administrator will report the back pay payments on an IRS Form W-2 and the liquidated damages payments on an IRS Form 1099.  Finally, the Settlement Agreement provides that any amount remaining in the Net Fund after the distributions to Plaintiffs and Future Opt-Ins shall revert to Cook Sales.

## MEMORANDUM OF LAW

### I.    Certification of Class pursuant to Section 216(b) of the FLSA

Pursuant to the Court's Order,  notice was mailed to and a collective action was conditionally certified of "All sales representatives employed by Cook Sales between December 22, 2012 and December 22, 2015, a liability period commencing three years prior to the effective date of the parties' Tolling Agreement."  Doc. 52, at 5.  During the ensuing notice period, the response was uniformly in support of the settlement.  *See* Smith Supp. Decl., at ¶ 6.  A total of 65 Opt-In Plaintiffs have joined the original four Named Plaintiffs and it is now appropriate for the Court to enter a final order certifying the case as a collective action for settlement purposes.

### II.   The Parties' Settlement Represents a Fair and Reasonable Compromise of Disputed Claims

#### A.    The Settlement Meets the Requirements Set Forth in *Lynn's Food Stores, Inc.* as well as the "Fairness" Factors Applicable to Rule 23 Actions

Plaintiffs seek Court approval of their settlement because, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Crabtree v. Volkert, Inc.,* 2013 WL 593500 (S.D. Ala. Feb. 14, 2013).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by employees provides some assurance of an adversarial context."  *Lynn's Food Stores.* at 1354.  This is because the employees are "likely represented by an attorney who

can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.* In the settlement of an opt-in collective action under the FLSA, the Court's role is to ensure that the employer does not "overreach" and take advantage of employees in settling claims for wages. *See*, *Lynn's Food*, 679 F.2d at 1354.

After scrutinizing the Settlement, this Court will find that the Settlement is fair and should be approved. Specifically, the Agreement resolves a *bona fide* dispute between the parties with respect to whether the employees at issue are entitled to overtime compensation under the FLSA and the amount of compensation due. Plaintiffs faced significant factual and legal obstacles which posed the risk of an unsuccessful outcome if this case were to proceed to trial. Cook Sales defended this case, in part, by attempting to demonstrate that many of the sales representatives were exempt from the payment of overtime compensation under the Retail Sales Exemption at 29 U.S.C. § 207(i). Smith Decl., Doc. 51, at ¶ 22. If the case were tried, the Court and jury would have been presented with a case where Cook Sales would have argued that its commission payment plan was a *bona fide* plan under the FLSA because many of the sales representatives regularly received substantial commission payments. *Id.* at ¶ 23. Plaintiffs would have argued that the plan was not *bona fide* because some of the sales representatives did not earn sufficient commissions. *Id.* If the Court or jury was persuaded by Cook Sales' arguments, such a finding would have been devastating to Plaintiffs' case. *Id.*

Plaintiffs were represented by experienced counsel, who, in the "adversarial context of a lawsuit," negotiated for the plaintiffs a "reasonable compromise of disputed issues." *See Lynn's Food Stores,* 679 F.2d at 1354.   When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores*, 679 F.2d at 1353.

In addition to meeting the *Lynn's Food* requirements that the settlement occur in the context of an adversarial lawsuit and resolve issues that are in dispute, the settlement here will also be found to be fair, adequate and reasonable using the standard articulated for approving the settlements of Rule 23 class actions.[5]  In *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984), the Eleventh Circuit suggested six factors for use in determining whether a Rule 23 settlement is fair, adequate, and reasonable   These factors are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*  As demonstrated herein, when evaluated under the *Bennett* factors, this Court will find that the Parties' settlement is fair, adequate, and reasonable.

---

[5] The Eleventh Circuit has not required that collective action approvals under Section 216(b) of the FLSA meet the  Rule 23 settlement approval factors in order for district courts to approve the settlement of collective actions under the FLSA.  The approval of Rule 23 class actions is designed to protect absent class members from the resolution of their claims without their approval.  Unlike Rule 23 settlements, collective action settlements under Section 216(b) are only binding on those potential opt-in plaintiffs who consent to join the action.  In any event, the settlement here meets the applicable Rule 23 settlement approval factors.

### 1.    The Likelihood of Success at Trial

Plaintiffs would have faced significant obstacles and risked an unsuccessful outcome if this case were to proceed to trial.  *See* Smith Decl., Doc. 51, at ¶¶ 22-26.  Cook Sales opposed conditional certification and notice, as well as liability. To prevail on liability, Plaintiffs would have had to demonstrate that Cook Sales did not properly comply with the FLSA's Section 7(i) exemption class-wide, despite the fact that some sales representatives received substantial commission payments.  *See id.*  Plaintiffs would have been in the position of arguing that, in spite of these substantial payments, Cook Sales' commission plan was not a *bona fide* plan because many of the sales representatives did not earn sufficient commissions.  *Id.;* compare *Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365 (M.D. Ga. 1998) (commission plan where commissions rarely exceeded guaranteed draw not *bona fide*) with *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1351 (N.D. Ga. 2009) (commission plan found to be *bona fide* where commission exceeded the guaranteed draw in four of fourteen months).  Assuming this hurdle could be overcome, Plaintiffs would then have had to establish that they worked substantial overtime hours throughout their employment and overcome Cook Sales contemporaneous time records that would have been presented to the factfinder.  *Id.* at ¶ 24.  Finally, Defendants almost certainly would have moved to decertify any class conditionally certified and could have moved to appeal any award in favor of Plaintiffs.  *Id.*

In sum,  Plaintiffs faced factual and legal issues at trial which would make the likelihood of success in the face of dispositive motions and trial uncertain.  The risks inherent in this case strongly supported settlement at this stage of litigation.

### 2.     The Settlement Falls Within The Range of Recovery Such That This Court Should Find It Is Fair, Adequate and Reasonable

The second and third *Bennett* factors, generally analyzed together, are the range of possible recovery and the point on or below the range at which a settlement is fair, adequate, and reasonable. *See, Behrens v. Wometco Enter., Inc*., 118 F.R.D. 534, 541 (S.D. Fla. 1988). The "Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322-1323 (S.D. Fla. 2005). Moreover, "the existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Id.*; *see*, *e.g.*, *Bennett*, 737 F.2d at 986; *Behrens*, 118 F.R.D. at 542 ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery").

This settlement resolves complex FLSA overtime claims for the 69 Plaintiffs who timely joined this action. It derived from an extensive review of Cook Sales' payroll and timekeeping records and was evaluated on the basis of detailed models of the damages that could be recovered. *See* Smith Decl, Doc. 51, at ¶ 25. If Plaintiffs prevailed on all claims for a two-year liability period and established that they worked 45 minutes off the clock per day during each week of employment as sales representatives, Plaintiffs' counsel estimated the back pay damages for all sales representatives would have been approximately $180,000.00 (with liquidated damages added, $360,000). Smith Decl., Doc. 51, ¶ 25. If Plaintiffs established that Cook Sales willfully violated the FLSA and Plaintiffs prevailed on all claims under a three-year liability period, Plaintiffs' counsel estimated that the back pay damages due to all sales representatives would have been approximately $270,000 (with liquidated damages added, $540,000). *Id.*

12

Of course, if Defendants were successful in proving their affirmative defenses, including the Section 7(i) defense, the result could have been no recovery at all.  The Parties settled on $495,000, inclusive of attorneys' fees and costs as a fair, adequate, and reasonable settlement for all members of the collective action after carefully modeling the claims of the sales representatives and evaluating the merits of these claims.  *Id.* at ¶ 26.  Plaintiffs' counsel estimates that after deductions from the Gross Settlement Fund of $495,000.00 ("Gross Fund") for attorneys' fees, expenses, and costs, Settlement Claims Administrator expenses, and service payments, the remaining funds to be paid to all members of the collective action will provide them with at least $45.00 per week in damages, which is very close to the damages that Plaintiffs' counsel calculated are due using the 45 minute per day unrecorded time model over a three-year period.  *Id.*  Distributions from the Net Fund will be equitable and based upon the same formula for all Opt-Ins.  Cook Sales' significant defenses under Section 7(i) were factored into the settlement amount.  *Id.*  In addition, Plaintiffs' counsel took into account the probability of the class not being certified for some or all claims and the probability a certified class would be decertified.  *Id.*  Cook Sales also would have opposed extending the statute of limitations to three years and Plaintiffs would have had the burden of proving willfulness to obtain such an extension.  *Id.*  Based on the extensive risk factors and the damage modeling performed, Plaintiffs' counsel are confident that the settlement is fair, adequate, and reasonable and, recommend approval of the settlement.  *Id.*

### 3.      The Complexity, Expense and Duration of Litigation

This complex collective action was resolved only after extensive litigation, research and analysis and mediation before an experienced class action mediator, Ms. Fern Singer.

The Parties fully briefed the factual and legal issues surrounding conditional certification of the case as a collective action.  Counsel for the Parties spent an enormous amount of time and effort advocating legal theories and modeling the potential damages at issue in this case.  *Id.* at ¶ 27.  The Parties exchanged extensive documents, damage calculations, compensation information, and engaged in detailed evaluation of Cook Sales' compensation practices for sales representatives.  *Id.*  The Settlement was the result of hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  *Id.*  Further litigation would increase the expenses of this litigation and would not likely increase the potential of recovery for the Plaintiffs.

### 4.    The Substance and Amount of Opposition to the Settlement

As directed by the Court, the Settlement Claims Administrator provided notice to the Potential Opt-in Plaintiffs in the form approved by the Court on August 25, 2016.  Francisco Decl., at ¶¶ 5-8.  No objections were  received in response to the notices.  In addition, 61 Opt-in Plaintiffs joined the original 8 Plaintiffs for a total of 69 participants out of 179 potential members of the collective action for a total of 38.5 percent.  Smith Supp. Decl, at ¶ 4.

Charlotte S. Alexander, the Deputy Director of the National Institute for Teaching Ethics and Professionalism and a Post Graduate Research Fellow at Harvard Law School, published a law review article after conducting an extensive study of FLSA collective actions, entitled "*Would An Opt In Requirement Fix The Class Action Settlement? Evidence From The Fair Labor Standards Act,*" pp. 466-67 & Figure 10 at pp. 489-91, 80:2 MISS. L.J. 443 (Winter 2010) ("Alexander Study").  In Ms. Alexander's study, she gathered data on the

opt-in rates in 38 FLSA collective actions.  The plaintiff opt-in rates in these cases ranged from 0% to 48%, with a median of 15%.  *See id.*  Thirty of the 38 cases had opt-in rates below 20%.  *Id.*  Another analysis of FLSA opt-in rates in federal courts around the country, cited by Ms. Alexander, calculated the average opt-in rate to be 15.71%.  *Id.* at p. 468 (citing Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in Federal Courts*, 29 BERKELEY J. EMP. & LAB. L. 269, 292 94 (2008)).[6]  The opt-in rate in this case was exceptionally high;  38.5% of potential opt-in plaintiffs have joined this action.  *See* Smith Supp. Decl., at ¶ 4.

This strong opt-in rate along with the fact that no objections were lodged to the Settlement supports Court approval of the Settlement.[7]

### 5.      The Stage Of Proceedings At Which The Settlement Was Achieved

The Parties reached settlement after hard-fought adversarial litigation and arm's length negotiations that took place over more than eight months.  Smith Decl., Doc. 51, at ¶ 27.  The Parties were only able to reach this Settlement after fully briefing the collective action motion, and exchanging voluminous personnel files, payroll documents, and time

---

[6] According to an experienced wage and hour class action lawyer specializing in defense: "[while estimates of the average opt-in rate for an FLSA collective action vary wildly, most fall in the range of 10-20%, with virtually no estimates higher than 30 percent"]. *In Through the Out Door:  Third Circuit Says FLSA Collective Actions Not Incompatible With Rule 23 State Law Class Actions,* Todd Dawson, April 2, 2012, http://www.employmentclassactionreport.com/flsa/, Bakerlaw.com.

[7] The notice in this case was provided to numerous Potential Opt-in Plaintiffs who were still employed with Cook Sales and who may have been concerned about filing claims out of a fear of reprisal. In considering plaintiffs' assertion that current employees might feel too inhibited to pursue individual claims, one court recognized that "the nature of the economic dependency involved in the employment relationship is inherently inhibiting." *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 U.S. Dist. LEXIS 17832 **13-14 (N.D. Ill. 2000).

records.   The Parties exchanged extensive damage calculations and compensation information, and engaged in detailed evaluation of Cook Sales' compensation practices for sales representatives including the company's defense that it complied with Section 7(i) of the FLSA by paying the sales representatives on a hourly plus commission basis.   On May 25, 2016, the Parties spent a full-day with Mediator Fern Singer attempting to resolve this case.   The Parties were unable to resolve the case at mediation, but continued to work with Ms. Singer thereafter to resolve the case.   On July 11, 2016, the Parties were able to reach an agreement to resolve this collective action.

In short, all relevant factors support a finding that the settlement represents a fair, adequate, and reasonable resolution of a *bona fide* dispute.

### B.     The Settlement Was The Result of Arm's Length Negotiations Free From Collusion

The Parties' settlement is the result of hard-fought adversarial, arm's length negotiations that took place over several months.   Smith Decl., Doc. 51, at ¶ 27.   It was negotiated at arm's-length by experienced counsel, free from fraud or collusion.   *Id.*   Its adversarial nature is evidenced by the extensive discovery and litigation activities which took place, including the motion for conditional certification and motions to strike evidence filed in support of this motion.

A "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."   *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 806 (3d Cir.1995), citing *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977).   In evaluating whether the proposed settlement represents such a compromise, this Court "is entitled to rely on the judgment of experienced counsel in its evaluation of the

16

merits of a class action settlement," *Cotton,* 559 F.2d at 1330, and both Plaintiffs' counsel and counsel for Cook Sales consider the settlement to constitute a compromise substantially beneficial to the parties. *See* Smith Decl., Doc. 51, at ¶¶ 21-24. This is especially so, when weighed against the uncertain outcome and risk of any litigation, and the expense and delay which would result from prosecuting this action against Cook Sales through trial and appeal. Its terms represent a successful resolution, especially in view of Cook Sales' potential total defense based upon the retail or service establishment exemption and its likely strong opposition to the overtime hours claimed by plaintiffs. *See id.* The settlement provides significant damages and a statute of limitations that relates back three years from execution of the tolling agreement as to current and former sales representatives companywide.

### C. Distribution Will Be Equitable

Pursuant to the Court-authorized forms of notice and claim forms, the Potential Opt-in Plaintiffs received notice, were apprised of, and chose to join this action and recover their shares of the Settlement. The distribution amounts are based upon Cook Sales' payroll and commission data that was modeled for the Plaintiffs and Potential Opt-in Plaintiffs. The Named Plaintiffs and Original Plaintiffs are slated to receive amounts that are similar to the amounts the Opt-in Plaintiffs will receive under the Settlement and approximately the same amounts per week. *See* Smith Supp. Decl., at ¶ 5.

### D. Modest Service Payments Should be Approved for the Named Plaintiffs and Opt-In Plaintiffs Who Helped Achieve This Favorable Settlement

During the claims-filing period, all Potential Opt-in Plaintiffs received notice that the Named Plaintiffs and Original Opt-in Plaintiffs, who brought this case and who participated in discovery and preparation for mediation, seek to receive modest service payments under

the terms of the proposed settlement of $5,000 per Plaintiff.  *See* Francisco Decl, Exh. A.
These payments recognize the dedication these individuals demonstrated to this litigation and
the extent of their efforts in assisting with the investigation, discovery including completing
Court interrogatories, preparing for mediation of the claims, attending mediation, consulting
with Plaintiffs' counsel to determine a fair settlement fund, and other contributions that they
made for their benefit and the benefit of Potential Opt-in Plaintiffs.  Smith Decl., Doc. 51, at
¶ 28.  No objections were filed to these service payments.  *See* Francisco Decl., at ¶ 14.
"Courts routinely approve incentive awards to compensate named plaintiffs for the services
they provide and the risks they incurred during the course of the class action litigation."
*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In Re S. Ohio
Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)) (approving $303,000 payment
to each class representative plaintiff in employment case where potential class members on
average received $38,000).  This modest enhancement award is appropriate and reasonable,
and consistent with awards made by other courts.  *See e.g. North Star Capital Acquisitions,
LLC v. Krig*, 2011 WL 65662 (M.D. Fla. 2011) (awarding $5,000 in incentive awards to the
named class representatives); *Holman*, 778 F. Supp. 2d at 1315, 1319 ($5,000 in service
awards approved); *Smith v. Wm. Wrigley Jr. Co.,* 2010 WL 2401149 (S.D. Fla. 2010)
(preliminarily approving $10,000 incentive award for lead plaintiff); *Pinto v. Princess Cruise
Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 in service awards to
the three representative plaintiffs).  Moreover, notwithstanding the reasonableness of the
requested enhancement award, the parties' Settlement Agreement is not contingent on the

approval of the payment of this amount.  Instead, the Named Plaintiffs and Original Opt-in Plaintiffs have agreed to accept the enhancement award the Court deems appropriate.

> **E.     Plaintiffs' Counsel Should Be Awarded Thirty Percent of the Common Fund They Recovered for the Plaintiffs**

The Settlement provides for Plaintiffs' counsel to receive a reasonable amount of attorneys' fees, expenses, and costs as a percentage of the settlement fund.  *See* Smith Decl., Doc. 51, at ¶ 29.  The Parties agreed that an amount for attorneys' fees, expenses, and costs that did not exceed thirty percent of the settlement fund could be requested under the circumstances of this case.  *Id.*  Plaintiffs' counsel now seek to be awarded thirty percent of the fund to compensate them for the attorneys' fees, costs and expenses they have incurred representing the Plaintiffs.  *Id.*

Plaintiffs seek to recover their attorneys' fees and litigation expenses from a common fund created by the Settlement, *i.e.* the Gross Fund, pursuant to *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class").  The Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorneys' fees be awarded on the entire maximum gross settlement fund even though amounts to be paid to potential opt-in plaintiffs who do not file Consent to Join forms will revert to Cook Sales.  *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).

The percentage requested from the Gross Fund is reasonable in light of the fact that a gross settlement of $495,000 was obtained in spite of Cook Sales' vigorous defenses,

including without limitation its defense that the sales representatives were not legally entitled to any overtime compensation pursuant to Section 7(i) of the FLSA and because Plaintiffs' counsel's Lodestar fees, costs, and expenses significantly exceed $148,500, which is equal to 30 percent of the Gross Fund. *See* Smith Decl., Doc. 51, ¶¶ 29-31; Smith Supp. Decl., at ¶ 7. On a pure contingency basis, Plaintiffs' counsel vigorously pursued claims on behalf of all sales representatives companywide, who had never received any overtime compensation, in the face of Defendants' Section 7(i) defense (and the challenge inherent to certifying a collective action potentially comprised of both exempt and non-exempt employees), which could have presented a total defense to the overtime claims at issue in this litigation or defeated certification under § 216(b). Doc. 51, at ¶ 26. Pursuing these claims required Plaintiffs' counsel to locate and interview numerous sales representatives, conduct extensive research regarding Section 7(i) of the FLSA, engage in extensive discovery, and negotiate a favorable settlement. Plaintiffs' counsel prepared a comprehensive damage model that was persuasive in establishing an estimate of the damages that could be recovered. *Id*. ¶ 25.

This case settled after more than eight months of litigation and mediation, including but not limited to, the exchange of voluminous discovery, mediation and numerous settlement negotiations. *Id.* ¶ 27. Plaintiffs and Potential Opt-Ins have benefited and will continue to benefit by these efforts, and after the fairness hearing, it is appropriate that Plaintiffs' counsel be compensated for performing these services.

Plaintiffs' counsel's request for 30 percent of the Gross Fund to be paid as attorneys' fees, costs and expense is reasonable in this case because it settled after significant discovery and motion practice had been conducted and extensive mediation and negotiations had

occurred.  The attorneys' fees requested by Plaintiffs' counsel should not be reduced because counsel efficiently resolved this case through extensive mediation and negotiation efforts rather than prolonging the litigation and increasing their potential fees.  As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex and novel litigation."  MCL 4th § 14.121.  As the Eleventh Circuit stated in *Norman v. The Housing Authority of the City of Montgomery*, 836 F.2d 1292, 1300 (11th Cir. 1988), "from the beginning and throughout the case, expertise in negotiations and tactics often advances a client's cause more quickly and effectively than the sustained and methodical trench warfare of the classical litigation model."

In similar cases, district courts in the Eleventh Circuit have frequently approved common fund attorneys' fee recoveries in the range requested here.  *See*, *e.g., Vogenberger v. ATC Fitness Cape Coral, LLC*, 2:14-CV-436-FTM-29CM, 2015 WL 1883537, at *3-4 (M.D. Fla. Apr. 24, 2015) (33 percent of settlement fund approved as attorneys' fees and costs); *Hosier v. Mattress Firm, Inc.,* 2012 WL 2813960 (M.D. Fla. June 8, 2012) (awarding 30 percent of the gross settlement); *Signorelli v. UtiliQuest, LLC,* 2008 U.S. Dist. LEXIS 109357, 8-9 (M.D. Fla. July 25, 2008) (awarding 30 percent of common fund); *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (attorneys' fees and costs equal to 30 percent of common fund approved); *Angione, et al. v. PSS World Medical, Inc.,* 3:02-00854 (M.D. Fla. Nov. 5, 2004) (approving attorneys' fees constituting 40% of common fund established for the benefit of 63 plaintiffs for unpaid overtime wages in case brought under FLSA and  California labor law); *see also, e.g., Lenahan v. Sears, Roebuck and Co.*, 2006

U.S. Dist. LEXIS 60307 (D.N.J. 2006)(attorneys' fees and costs equal to 31.9 percent of common fund approved).

In support of recovery of 30 percent of the common fund, Plaintiffs address the *Camden I* factors.[8]  Plaintiffs' counsel has extensive experience litigating FLSA collective actions and the results in this matter warrant the requested fees and costs since Plaintiffs' counsel have spent numerous hours on the litigation and settlement of this case.   In addition to presenting legal analysis demonstrating the uncertainty of whether Cook Sales could successfully defeat certification under § 216(b) and whether it would prevail based upon its asserted Section 7(i) defense, which could have presented a *total defense* to the overtime claims, Plaintiffs' counsel expended substantial efforts locating and interviewing sales representatives, undertook substantial research and analysis of pay, commission and time-keeping records, completed substantial mediation briefing and negotiated a favorable settlement.  Plaintiffs have all benefited from Plaintiffs' counsel's efforts.  Plaintiffs' current Lodestar significantly exceeds the $148,500 sought here.  *See* Smith Decl., Doc. 51, at ¶ 31 and Exh. 51-6; Smith Supp. Decl., at ¶ 7.  In addition, after Court approval of the settlement,

---

[8] Factors for the Court's consideration regarding whether a particular percentage may be approved as reasonable include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Stahl v. MasTec, Inc.,* No. 8:05–cv–1265–T–27TGW, 2008 WL 2267469, at *1 (M.D.Fla. May 20, 2008) (citing *Boeing Co. v. VanGemert, et al.,* 444 U.S. 472, 480–81, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), and *Waters v. International Precious Metals Corp.,* 190 F.3d 1291, 1296–97 (11th Cir.1999)).

Plaintiffs' counsel will continue to provide legal advice to Plaintiffs regarding the terms of the settlement and will facilitate the execution of the settlement including supervising the Settlement Claims Administrator in administering the payments to be distributed from the settlement and in preparing appropriate tax forms.

Finally, the notice provided to Potential Opt-in Plaintiffs explained that Plaintiffs' counsel would seek to recover 30 percent of the common fund as compensation for their attorneys' fees and costs.  No Potential Opt-In Plaintiff objected to the percentage or amount of fees and costs sought by Plaintiffs' counsel.

All of these factors warrant that attorneys' fees, costs, and expenses in this matter be calculated at 30 percent of the Gross Fund obtained on behalf of all Plaintiffs and Potential Opt-Ins.

### Conclusion

In sum,  Plaintiffs submit this Settlement as a fair and reasonable resolution of the disputed issues and that its entry will "secure the just, speedy, and inexpensive determination" of this action.  Fed.R.Civ.P. 1.  Accordingly, Plaintiffs urge this Court to enter the proposed order attached as Exh. 3 to the Supplemental Declaration of Sam J. Smith, approving the Settlement, approving plaintiffs' counsel's request for attorneys' fees and costs, and dismissing the case with prejudice and retaining jurisdiction to enforce the terms of the parties' settlement.

Dated:  December 30, 2016.                    Respectfully submitted,


                                              /s/ Sam J. Smith_____
                                              Sam J. Smith
                                              Florida Bar Number 818593 (pro hac vice
                                              admission granted)
                                              Burr & Smith, LLP
                                              111 2nd Ave. N.E., Suite 1100
                                              St. Petersburg, FL  33701
                                              813-253-2010
                                              727-823-2126 (facsimile)
                                              ssmith@burrandsmithlaw.com

                                              Robert Childs
                                              Wiggins, Childs, Pantazis, Fisher & Goldfarb
                                              The Kress Building
                                              301 19th Street North
                                              Birmingham, AL 35203
                                              205-314-0500
                                              205-254-1500 (facsimile)
                                              RChilds@wigginschilds.com

                                              Robert C. Epperson
                                              Robert C. Epperson, Attorney at Law
                                              P O Box 477
                                              Foley, AL 36536
                                              251-943-8870
                                              repperson@rcelaw.com

                                              **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

   I hereby certify that on this 30th day of December 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

     Elliott Britton Monroe
     Taffi Smith Stewart
     Michelle McClafferty
     LLOYD, GRAY, WHITEHEAD & MONROE, P.C.
     2501 Twentieth Place S., Ste. 300
     Birmingham, AL 35223
     bmonroe@lgwmlaw.com
     mmcclafferty@lgwmlaw.com
     tstewart@lgwmlaw.com


     /s/ Sam J. Smith_____
       Attorney

1